# EXHIBIT E



| | | |
|---|---|---|
| DISTRICT: 11 | TRIAL DOCKET | PAGE:   1 |
| LOCATION: 01 | | DATE: 08/10/2009 |
| CASE NUM: 11-01-0002973-2009 | | ROOM: |
| COMPLAINT NUM: 001 | | TIME: 01:00 PM |
| FILED: 05/18/2009   INIT. CLAIM:       $3,274.25      COSTS & FEES: $60.00*      CONTRACT | | |

# PLAINTIFF        VS.        DEFENDANT

WAYRIC SERVICES, INC

12030 TRALEE RD NO. 204
LUTHRVL-TIMNIUM        MD   21093

PEROUTKA, STEPHEN G
ATTORNEY FOR PLAINTIFF

STONE, TIMMY L SR

14 SUNNY CT
THURMONT            MD   21788

ATTORNEY FOR DEFENDANT

JUDGMENT ENTERED FOR THE PLAINTIFF(S)

\_\_ AFFIDAVIT            JUDGMENT PRINCIPAL.......$_____
\_\_ DEFAULT
\_\_ CONSENT             PRE-JUDGMENT-INTEREST....$_____
\_\_ CONFESSED
\_\_ FOREIGN             TOTAL JUDGMENT..........$_____
\_\_ AFTER TRIAL
\_\_ JOINTLY AND SEVERALLY   COSTS...................$_____

                        OTHER...................$_____
\_\_ DISMISSED
                        ATTORNEY'S FEES.........$_____

✔ JUDGMENT DENIED       POST-JUDGMENT INTEREST AT  \_\_ LEGAL RATE      \_\_ CONTRACTUAL RATE
   THE PLAINTIFF(S)
   IN FAVOR OF THE
   DEFENDANT
       \_\_ AFTER TRIAL
       \_\_ PER RULE 3-615

\_\_ IN REPLEVIN, FOR POSSESSION OF PROPERTY CLAIMED, VALUED AT $_____, IS AWARDED TO THE _____,
       TOGETHER WITH DAMAGES OF $_____ FOR THE DETENTION THEREOF.
\_\_ IN DETINUE, FOR POSSESSION OF PROPERTY CLAIMED, OR IN THE ALTERNATIVE, $_____REPRESENTING THE
       VALUE OF THE PROPERTY SUED FOR, PLUS DAMAGES OF $_____ FOR ITS DETENTION IS AWARDED TO
       THE_____.

\_\_ BAD FAITH INSURANCE CLAIM INDICATOR

       JUDGE ID: _____   JUDGE: _____        DATE: 08/10/2009

05/18/2009 INITIAL CASE FILING
06/07/2009 REGULAR CLAIM                    SERVED                      ON DEFENDANT
06/16/2009 INTENTION TO DEFEND FILED /REASON FOR DEFENSE FOLLOWS
06/16/2009 I DISPUTE THIS CLAIM
06/17/2009 MERIT TRIAL              SET FOR 07/20/2009 POSTPONED DEFENDANT FILED INTENTION TO DEFEND -CLK
06/17/2009 NOTICE OF FILING OF INTENTION TO DEFEND SENT TO THE ATTORNEY FOR PLAINTIF
06/17/2009 NOTICE OF TRIAL POSTPONEMENT SENT TO ALL PARTIES
06/23/2009 NOTICE OF OUTCOME OF ORIGINAL SERVICE SENT TO THE PLAINTIFF

|  |  |  |
|---|---|---|
| WAYRIC SERVICES, INC. | * | DISTRICT COURT |
| PLAINTIFF | * | OF MARYLAND |
|  | * | FOR |
| V.S. | * | FREDERICK COUNTY |
| TIMMY L STONE, SR | * | CASE NO:2973-2009 |
| DEFENDANT | * | TRIAL DATE: 8/10/09 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### INTEREST WORKSHEET FOR JUDGMENT

Total Judgment Breakdown:

| | |
|---|---|
| Principal: | $3,274.25 |
| Interest: | $251.35 |
| Total Judgment: | $3,525.60 |
| 15% Attorney Fee per Contract | $491.13 |
| Plus Costs | |

Interest is computed as follows:

6.000% per annum on $3,274.25 from 04/30/08 to 8/10/09 which is 467 days at $0.5382328 per diem = $251.35

Respectfully Submitted,
Peroutka & Peroutka P.A.

By:_____
Stephen G. Peroutka #1114 Michael A. Peroutka
Michele R.Gagnon        Scott T. Whiteman
8028 Ritchie Hwy, Ste 300
Pasadena MD 21122
(800) 899-2424   09-18062-0

### CERTIFICATE OF SERVICE

I HEREBY certify that on June 22, 2009, a copy of this Worksheet was mailed to Timmy L Stone, Sr, 14 Sunny Ct, Thurmont, Maryland 21788

_____
Peroutka & Peroutka

This communication is from a debt collector.

RECEIVED 2009 JUN 24 PM 12: 17 DISTRICT COURT OF MD 11-01 FREDERICK

FREDERICK COUNTY

Trial Docket

District:                                                    Page:

Location:                                                    Date:  8/10/09

Case Number: 2973-2009                          Room:

Complaint Num:                                        Time:

Filed:                    Init. Claim: 3,274.25        Cost & Fees :50.00


PLAINTIFF                          VS.          DEFENDANT
Wayric Services, Inc.                                  Timmy L Stone, Sr

Stephen G. Peroutka                             Attorney For Defendant
Attorney For Plaintiff                              09-18062-0


Judgment Entered For The Plaintiff(s)

_____AFFIDAVIT                          JUDGMENT PRINCIPAL............3,274.25

_____DEFAULT                            PRE-JUDGMENT-INTEREST....251.35

_____CONSENT                           TOTAL JUDGMENT.....:.............3,525.60

_____CONFESSED                         COSTS.....................................50.00

_____FOREIGN                            OTHER........................................

_____TRIAL JUDGMENT                 ATTORNEY'S FEES...................491.13

_____POSSESSION                        POST JUDGMENT INTEREST AT ___LEGAL RATE ___CONTRACTUAL RATE

_____JUDGMENT DENIED
THE PLAINTIFF IN
FAVOR OF THE
DEFENDANT

_____ JOINTLY AND SEVERALLY

_____POSSESSION OF PROPERTY CLAIMED, VALUED AT $_____, IS AWARDED TO
THE _____ TOGETHER WITH DAMAGES OF $_____ FOR  DETENTION THEREOF.

_____$_____ REPRESENTING THE VALUE OF THE PROPERTY SUED FOR, PLUS DAMAGES OF $_____ FOR
ITS DETENTION IS AWARDED TO THE _____


JUDGE ID:_____        JUDGE:_____        DATE:_____

This communication is from a debt collector.

```
                              *
                              *
                              *
WAYRIC SERVICES, INC.         *      DISTRICT COURT
PLAINTIFF                     *
                              *      OF MARYLAND
                              *
                              *      FOR FREDERICK COUNTY
V.S.                          *
                              *      CASE NO: 2973-2009
                              *
TIMMY L STONE, SR             *
                              *      TRIAL DATE: 8/10/09
                              *
DEFENDANT                     *
                              *
                              *
                              *
```

************************************************************************

NOTICE OF INTENTION TO OFFER CERTIFIED RECORDS
OF REGULARLY CONDUCTED BUSINESS ACTIVITY


        Pursuant to Rule 5-902(b), the Plaintiff gives notice of their intention to offer the
contract or agreement, account assignments, monthly statements, or dishonored checks as
certified records of regularly conducted business, which are self-authenticating documents.

        These records are available for inspection at Plaintiff's counsel's office at the address
below.

RECEIVED
2009 JUN 23 AM 11: 18
DISTRICT COURT OF M
11-01 FREDERICK

                                    Respectfully Submitted,
                                    Peroutka & Peroutka P.A.

                                    By:_____
                                    Stephen G. Peroutka #1114 Michael A. Peroutka
                                    Michele R.Gagnon          Scott T. Whiteman
                                    8028 Ritchie Hwy, Ste 300
                                    Pasadena MD 21122
                                    (800) 899-2424 09-18062-0

                    **CERTIFICATE OF SERVICE**
        I HEREBY certify that on this 22 June 2009, a copy of the Plaintiff's motion was
mailed to TIMMY L STONE, SR at 14 Sunny Ct  Thurmont Maryland
21788.

                                    _____
                                    Peroutka & Peroutka


This communication is from a debt collector

☐ Check this box if this is a new address.

Address: _Thurmont MD 21788_

14 Sunny Ct

Home Phone

(240) 422-7230    Work Phone    RECEIVED    Signature _Timmy Stone_    Date  6 / 16 / 2009

Explanation of defense: _I Dispute Debt, I will Challenge_

*FREDERICK COUNTY*

I intend to be present at the trial of this claim and demand proof of the Plaintiff's claim.

**SEE ATTACHED NOTICE FOR IMPORTANT INFORMATION**

Any reasonable accommodation for persons with disabilities should be requested by contacting the court prior to trial.

**A corporation** may enter an appearance only by an attorney except that an officer of the corporation may appear on its behalf if the action is based on a claim that does not exceed $5,000.00.

**Notice :** If you **contest the claim** or any part hereof, you must complete and tear off this Notice of Intention to Defend and file this notice no later than 15 days after you receive this Summons and be present in court on the trial date. If you do not appear, judgment by default for the relief sought may be granted.

## NOTICE OF INTENTION TO DEFEND

Defendant : TIMMY L. STONE, SR
Case # 1101000297322009
Trial Date : Jul 20, 2009
Complaint # 001

----- CUT HERE -----

----- CUT HERE -----

Date : _____ / _____ / 20 _____    Signature : _____

I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information and belief and do further affirm that I am a competent person over 18 years of age and not party to the case.

Attempt: _____    Attempt: _____    Attempt: _____

☐ I was unable to serve because _____

Description of the Defendant / Person Served : Race _____ Sex _____ Height _____ Weight _____ Age _____

The cost of service is $ _____

I concluded that individual served is of suitable age discretion are:

and that: (4) the above listed address is the defendant's residence or usual place of abode. The facts upon which I

(3) of suitable discretion in that relationship to the defendant is _____

The person I left the papers with acknowledged being: (1) A resident of above listed address; (2) 18 years of age or older;

on date _____ / _____ / 20 _____    at location _____

☐ I served a summons by delivery of the complaint and all supporting papers to _____

I certify that:

termination of the validity of the process.

serve, you are to make your return below and return the original process to the court no later than ten days following the

You are hereby commanded to serve this writ of summons and to make your return promptly if served. If you are unable to

To Private Process Server :

**MUST BE SERVED BY Jun 20, 2009**    Dixie L. Scholtes, Administrative Clerk / KS

Notice of Intention to Defend may result in a judgment by default or the granting of the relief sought.

you must file the attached Notice of Intention to Defend within fifteen days of receiving this complaint. Failure to file the

You are summoned to appear for trial at the date, time and location shown above. If you intend to be present at the trial,

| Trial Date : | Jul 20, 2009 |
| Trial Time : | 09:00 am |
| Trial Room : | |

Complaint No. : 001
Case Number : 1101000297322009
Issue Date : May 21, 2009
Date Filed : May 18, 2009

THURMONT, MD 21788
Address : 14 SUNNY CT
Serve On : TIMMY L. STONE, SR
Defendant : **TIMMY L. STONE, SR**

## WRIT OF SUMMONS

**DISTRICT COURT OF MARYLAND for Frederick County**
Located at 100 West Patrick St, Frederick, Maryland 21701



**DISTRICT COURT OF MARYLAND** for Frederick County
Located at 100 West Patrick St, Frederick, Maryland 21701

## WRIT OF SUMMONS

Defendant : **TIMMY L. STONE, SR**
Serve On : TIMMY L. STONE, SR
Address : 14 SUNNY CT
  THURMONT, MD 21788

Date Filed : May 18, 2009
Issue Date : May 21, 2009
Case Number : 110100029732009
Complaint No. : 001

| Trial Date | : Jul 20, 2009 |
|---|---|
| Trial Time | : 09:00 am |
| Trial Room | : |

You are summoned to appear for trial at the date, time and location shown above. If you intend to be present at the trial, you must file the attached Notice of Intention to Defend within fifteen days of receiving this complaint. Failure to file the Notice of Intention to Defend may result in a judgment by default or the granting of the relief sought.

**MUST BE SERVED BY Jun 20, 2009      Dixie L. Scholtes, Administrative Clerk / KS**

To Private Process Server :

You are hereby commanded to serve this writ of summons and to make your return promptly if served. If you are unable to serve, you are to make your return below and return the original process to the court no later than ten days following the termination of the validity of the process.

I certify that:
☐ I served a summons by delivery of the complaint and all supporting papers to _____ **SEE ATTACHED** _____
  on date ___ / ___ / 20 ___ at location _____
  The person I left the papers with acknowledged being: (1) A resident of above listed address; (2)18 years of age or older; (3) of suitable discretion in that relationship to the defendant is _____
  and that; (4) the above listed address is the defendant's residence or usual place of abode. The facts upon which I concluded that individual served is of suitable age discretion are: _____
  _____ The cost of service is $ _____
Description of the Defendant / Person Served : Race _____ Sex _____ Height _____ Weight _____ Age _____
☐ I was unable to serve because _____
Attempt: _____ Attempt: _____ Attempt: _____ Attempt: _____
I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information and belief and do further affirm I am a competent person over 18 years of age and not party to the case.

Date : ___ / ___ / 20 ___      Signature : _____

CUT HERE ------------------------------------------------------------------------------ CUT HERE

## NOTICE OF INTENTION TO DEFEND

Defendant : TIMMY L. STONE, SR
Trial Date : Jul 20, 2009

Case # 110100029732009
Complaint # 001

Notice : If you contest the claim or any part thereof, you must complete and tear off this Notice of Intention to Defend and file this notice no later than 15 days after you receive this Summons and be present in court on the trial date. If you do not appear judgment by default or the relief sought may be granted.
**A corporation** may enter an appearance only by an attorney except that an officer of the corporation may appear on its behalf if the action is based on a claim that does not exceed $5,000.00.
Any reasonable accommodation for persons with disabilities should be requested by contacting the court prior to trial.

**☞ SEE ATTACHED NOTICE FOR IMPORTANT INFORMATION**
I intend to be present at the trial of this claim and demand proof of the Plaintiff's claim.

Explanation of defense : _____

___ / ___ / 20 ___   _____   ( ___ ) _____   ( ___ ) _____
Date                    Signature                  Work Phone                    Home Phone

_____   Case
Address                                               Num.

☐ Check this box if this is a new address.

WAYRIC SERVICES, INC.

        Plaintiff

        v.

STONE, TIMMY L

        Defendant

\* IN THE

\* DISTRICT COURT

\* OF MARYLAND FOR

\* FREQUERICK COUNTY

\* Case No. 2973-2009

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF RETURN OF SERVICE

I hereby certify that I am a competent private person over eighteen (18) years of age and not a party to this action and that I did serve the process in this action as described below:

| | |
|---|---|
| Person Served: | **MARILYN STONE** |
| Relationship to Defendant | **WIFE** |
| Type of Document | **SUMMONS, COMPLAINT AND EXHIBITS** |
| Date of Service: | **6/7/2009**      **05:05 PM** |
| Location of Service: | |

**14 SUNNY CT**
**THURMONT**          **MD**     **21788**

The person I left the papers with ackowledges being: (1) a resident of the above listed address; (2) 18 years of age or older; (3) of suitable discretion in that relationship to the defendant is as listed above and that (4) the above listed address is the defendant's residence or usual place of abode (5) or is the defendant's place of business.

Description of the individual served is a follows:

| Race | Sex | Height | Weight | Hair | Age |
|---|---|---|---|---|---|
| **WHITE** | **Female** | **5'8** | **200** | **BLACK** | **45** |

The cost of service is    **$40.00**

I solemnly declare and affirm under the penalties of perjury the facts and matters set forth above are true and correct to the best of my knowledge, information and belief.

6/7/2009   DOMINIC HARRIS
                 P.O. Box 1745
                 Glen Burnie, MD 21060
                 410-969-2515

| | |
|---|---|
| **LOCATED AT (COURT ADDRESS)**<br>FREDERICK COUNTY<br>100 West Patrick Street<br>Frederick MD 21701 | **COMPLAINT** ☑ $5,000 or under ☐ over $5,000 ☐ over $10,000<br><br>Clerk: Please docket this case in an action of ☑ **contract** ☐ **tort**<br>☐ **replevin** ☐ **detinue.**<br>The particulars of this case are: |

**CASE NO.**

**CV** 1101 2973 2009

**PARTIES**

**Plaintiff:**

Wayric Services, Inc.
12030 Tralee Rd No. 204
Luthrvl-timnium MD 21093

**VS.**

**Defendant(s):**

| 1. | Timmy L Stone, Sr<br>14 Sunny Ct<br>Thurmont Maryland 21788 | **Serve by:**<br>☐ Certified Mail<br>☑ Private Process<br>☐ Constable<br>☐ Sheriff |
|---|---|---|
| 2. | | **Serve by:**<br>☐ Certified Mail<br>☐ Private Process<br>☐ Constable<br>☐ Sheriff |
| 3. | | **Serve by:**<br>☐ Certified Mail<br>☐ Private Process<br>☐ Constable<br>☐ Sheriff |
| 4. | | **Serve by:**<br>☐ Certified Mail<br>☐ Private Process<br>☐ Constable<br>☐ Sheriff |

RECEIVED
2009 MAY 13 AM 11:18
DISTRICT COURT OF MD
11-01 FREDERICK

That the Plaintiff as stated above by Stephen G. Peroutka, its attorney, sues the Defendant for money payable by the Defendant to the Plaintiff as follows: That the Defendant purchased miscellaneous merchandise, services and/or received a cash advance with their account with WAMU  That Wayric Services, Inc. is the subsequent assignee of WAMU, the original creditor.  There is a balance overdue and owed by the Defendant to the Plaintiff as per affidavit and/or statements attached here. Also, the agreement provides for reasonable Attorney's Fees.

(See Continuation Sheet)

The Plaintiff claims:

☑ $ 3,274.25 plus interest of $ See Worksheet and attorney's fees of $ 491.13 plus court costs.

☐ Return of the property and damages of $_____ for its detention in an action of replevin.

☐ Return of the property, or its value, plus damages of $_____ for its detention in action of detinue.

☐ Other: and demands judgment for relief.

_Signature of Plaintiff/Attorney/Attorney Code_  #1114

Telephone Number: (410) 768-2280    03-18062-0

**ATTORNEYS**

**For Plaintiff - Name, Address, Telephone Number & Code**

Stephen G. Peroutka #1114        Michael A. Peroutka
Peroutka & Peroutka, P.A.
1028 Ritchie Hwy. Ste 300        Michele R. Gagnon
Pasadena, MD 21122               Scott T. Whiteman

## APPLICATION AND AFFIDAVIT IN SUPPORT OF JUDGMENT

Attached hereto are the indicated documents which contain sufficient detail as to liability and damage to apprise the Defendant clearly of the claim against the Defendant, including the amount of any interest claimed.

☐ Properly authenticated copy of any note, security agreement upon which claim is based ☑ Itemized statement of account ☑ Interest work sheet

☐ Vouchers ☐ Check ☐ Other written document ☐ _____ ☐ Verified itemized repair bill or estimate

I HEREBY CERTIFY: That I am the ☐ Plaintiff ☐ _____ of the Plaintiff herein and am competent to testify to the matters stated herein, which are made on my personal knowledge; that there is justly due and owing by the Defendant to the Plaintiff the sum set forth in the Complaint.

**(Owner/Partner/Agent/Officer)**

☐ That _____

See Attached Affidavit

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the above Complaint are true and I am competent to testify to these matters. The Defendant is not now in the military service, as defined in the Service Members Civil Relief Act.

_____        _____
Date                            Signature of Affiant

**DC/CV 1 (front) (Rev. 11/2004)**

STATE OF ___Maryland_____

COUNTY OF __Anne Arundel_____

## AFFIDAVIT IN SUPPORT OF COMPLAINT

    I HEREBY CERTIFY THAT: I,  Richard Rieman, Jr. , AM THE

__President__ OF __Wayric Services, Inc.,__
    (title)         (Company Name)

the Plaintiff herein, and am competent to testify to the matters stated herein which are
made on my personal knowledge:

    Defendant(s)  TIMMY L STONE, SR,  under  account number
4185870001831242, owes the sum of $3,274.25 with interest in the amount of <u>see</u>
<u>worksheet</u> calculated from 4/30/08 and attorneys fees of $491.13 based upon the facts set
forth in the attached Wayric Services, Inc. account compilation.  This compilation
consists of records from Providian purchased and maintained by Wayric Services, Inc.;
these records are:

    (a) true and correct copies of records that were made at or near the time of the occurrence
    of the matters set forth by, or from information transmitted by, a person with
    knowledge of these matters; and

    (b) were made and kept in the course of the regularly conducted business activity; and

    (c) were made and kept by the regularly conducted business activity as a regular practice.

    The Defendant is not in the military service, as defined in the Service Members
Civil Relief Act of 2004 with amendments, nor has been in such service within thirty
days hereof.

    I do solemnly declare and affirm under the penalties of perjury that the matters set
forth above are true and correct to the best of my knowledge.

Date: April 28, 2009

                        Signature of Affiant

                        Richard Rieman, Jr.
                        Printed Name of Affiant

    I HEREBY CERTIFY that on April 28, 2009 , before me, the subscriber, a Notary
Public in and for the City/County aforesaid, personally appeared the above-stated affiant,
and made oath in due form of law.

59W/09-18062-0
7042-01
Providian

                        Notary
                        My Commission Expires:

Notary Public, Anne Arundel County, Maryland
My Commission Expires July 1, 2010

# WAYRIC SERVICES, INC.
# ACCOUNT SUMMARY

| | |
|---|---|
| AcctID | 09-18062-0 |
| PortfolioID | 7042-01 |
| Merchant | WAMU |
| AcctNumber | 4185870001831242 |
| SSN | XXX-XX-3434 |
| DateOfBirth | 0/00/00 |
| Prefix | |
| BrwrFirstName | TIMMY L |
| BrwrLastName | Stone |
| Suffix | Sr |
| BrwrAddr1 | 14 Sunny Ct |
| BrwrAddr2 | |
| City | Thurmont |
| State | MD |
| Zip | 21788 |
| HomePhone | |
| WorkPhone | |
| WirelessPhone | |
| OtherPhone | |
| EmpName | Walkersville Bowling Cntr |
| EmpAddress | 301-829-8346  **** $$$ |
| CoSSN | |
| CoDateOfBirth | |
| CoPrefix | |
| CoFirstName | |
| CoLastName | |
| CoSuffix | |

| | |
|---|---|
| CoAddress | |
| CoAddress2 | |
| CoCity | |
| CoState | |
| CoZip | |
| CoHomePhone | |
| CoWorkPhone | |
| CoWirelessPhone | |
| CoOtherPhone | |
| CoBrwrEmName | |
| CoBrwrEmpAddress | |
| OriginationDate | 6/01/07 |
| LastPmtDate | September 24, 2007 |
| LastPmtAmt | .00 |
| ChgOffDate | 4/30/08 |
| ChgOffBalance | 3,274.25 |
| PrincipalBalance | 3,274.25 |



**EXHIBIT 2**

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT is dated as of March 25, 2009 between Riverwalk Holdings, LTD organized under the laws of Texas, with their principal place of business located at 1132 Glade Rd, Colleyville, TX 76034 ("Seller"), and Wayric Services, Inc. located at 12030 Tralee Rd #204, Timonium MD 21093 ("Buyer").

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated March 24, 2009, between Buyer and the Sellers (the "Agreement"), the Sellers do hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

This Bill of Sale, Assignment and Assumption Agreement is executed without recourse and without representations or warranties including, without limitation, warranties as to collectibility.

Seller                                  Buyer

By: _____          By: _____
        (Signature)                            (Signature)

Name: Neil Patel                       Name: Richard P. Rieman

Title: CEP & Managing Partner          Title: Jr.President

#2
WAMU
W33

## APPENDIX B
### Bill of Sale

      Washington Mutual Bank, for value received and in accordance with the terms of the Forward Flow Purchase and Sale Agreement by and between Washington Mutual Bank and Riverwalk Holdings, Ltd. ("Purchaser"), dated as of May 30, 2008 (the "Agreement"), does hereby sell, assign and transfer to Purchaser, its successors and assigns, all right, title and interest in and to the Accounts listed in the Account Schedule attached (as may be amended in accordance with the Agreement) as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on _5/3?/08_

Cut-off Date: _5/19/08_

Closing Date: _5/30/08_

WASHINGTON MUTUAL BANK

By _K7PB7_ ☯

Print Name _KETERY D BRAYTON_

Title _FVP BSCC SALES_

[Washington Mutual Bank will provide a separate Bill of Sale in connection with each monthly purchase of Accounts.]

Find a Location | Contact Us | Help | Security & Privacy | Careers

search this site    SEARCH

| Personal | Business | About WaMu | My Accounts |

The WaMu Difference | In Your Community | Corporate Profile | Careers | Investor Relations | Newsroom

# About WaMu    News Release

**Newsroom**

About WaMu

News Releases

Current News Releases

Archived News Releases

Media Kit: Occasio

Events

Media Contacts

E-mail Alerts

⎙ View printer-friendly version

← BACK

### Washington Mutual to Acquire Providian Financial; Strategically Compelling Fit for Both Companies

SEATTLE & SAN FRANCISCO--(BUSINESS WIRE)--June 6, 2005--Washington Mutual, Inc. (NYSE: WM), announced that it has entered into a definitive agreement to acquire Providian Financial (NYSE: PVN) in a stock and cash transaction valued at approximately $6.45 billion. The transaction brings together two of the nation's leading financial services companies focused on serving middle market consumers.

"Today's transaction enhances Washington Mutual's consumer banking growth while strengthening our leadership position in the middle-market customer segment," said Kerry Killinger, chairman and chief executive officer of Washington Mutual. "Providian is a highly profitable business with solid credit quality. Its focus on middle market consumers makes Providian a natural fit for our business and a winning combination for both companies' customers."

"This combination also helps to further diversify our balance sheet and earnings by adding attractive, high-yielding credit card assets, while improving our net interest margin and adding stable fee income," added Killinger.

The transaction is expected to be accretive within a year on both a GAAP and cash basis.

Washington Mutual said Providian will become the company's fourth major business unit and will continue to operate out of its current headquarters in San Francisco. Washington Mutual also said it plans to retain Providian's management team and infrastructure, making the integration low risk and allowing for a quick and seamless transition.

Under the terms of the agreement, shareholders of Providian will receive consideration based on a fixed exchange ratio of .45 Washington Mutual common shares for each Providian share. The merger consideration will be paid 89 percent in stock and 11 percent in cash. The stock consideration will be determined by multiplying the fixed .45 exchange ratio by 0.89, and the cash consideration will be determined by multiplying the .45 ratio by the product of 0.11 and the average closing stock price of Washington Mutual for the 10 trading days immediately preceding completion of the merger. Based on the closing price of Washington Mutual's stock on June 3, 2005, the implied per share purchase price is $18.71.

Joseph Saunders, Providian's chairman and chief executive, will continue to run the credit card business and will report directly to Steve Rotella, Washington Mutual's president and chief operating officer. Other members of Providian senior management team will also be joining Washington Mutual.

"Providian's management has successfully developed innovative products and services, while providing superior customer support, strong underwriting and efficient operations," said Killinger. "Retaining Providian's leadership team helps ensure strong credit management and continuity of marketing expertise in the credit card business, while allowing Washington Mutual's management to remain focused on the priorities we've set forth for the entire company. We are all committed to achieving our long-term targets, producing top-tier performance in our industry and delivering superior long-term shareholder returns."

Saunders said, "This transaction provides Providian shareholders financially attractive terms while allowing us to take the card business to the next level. Washington Mutual's size and resources will allow us to operate with a lower cost structure and greater efficiency than we could on our own. The compelling combination also

enables us to leverage the strength of Washington Mutual's nationally recognized brand and utilize its more than 2,000 retail stores as a new growth channel.

"Our success as an independent company is in large part due to the dedication of our employees, whose efforts have made this next step forward possible," added Saunders. "We're pleased that Providian and our employees will be sharing our future with Washington Mutual, a company that shares our vision and values."

The companies noted that Providian credit card customers should expect business as usual. Their accounts, policies and payment procedures remain unchanged.

The acquisition is expected to be completed in the fourth quarter of 2005 and is subject to approval of Providian shareholders and regulatory approvals.

Lehman Brothers, Morgan Stanley, and the law firm Simpson Thacher & Bartlett advised Washington Mutual, and Goldman, Sachs & Co., Citigroup Global Markets, and the law firm of Wachtell, Lipton, Rosen & Katz advised Providian on the transaction.

Conference Call

Killinger and Saunders will host an analyst/investor conference call this morning, June 6, at 7:30 a.m. Pacific Time. Analysts and investors may dial in and participate in the question/answer session. To access the call, please dial 1-888-396-2384. International callers may dial 1-617-847-8711. The passcode "86950841" is required to access the call. A listen-only live broadcast of the call also will be available on the investor relations page of the company's Website at www.wamu.com/ir.

A recording of the conference call will be available approximately one hour after the conclusion of the call at 1-888-286-8010. Callers from outside the United States may dial 1-617-801-6888. The passcode "18243170" is required to access the replay.

About Washington Mutual

With a history dating back to 1889, Washington Mutual www.wamu.com is a retailer of financial services that provides a diversified line of products and services to consumers and commercial clients. At March 31, 2005, Washington Mutual and its subsidiaries had assets of $319.70 billion. Washington Mutual currently operates more than 2,400 retail banking, mortgage lending, commercial banking and financial services offices throughout the nation. Washington Mutual's press releases are available at www.wamunewsroom.com.

About Providian

San Francisco-based Providian www.providian.com is a leading provider of credit cards to mainstream American consumers throughout the United States. By combining experience, analysis and technology, Providian seeks to build long-lasting relationships with its customers by providing products and services that meet their evolving financial needs.

Forward Looking Statements

Statements contained in this press release which are not historical facts are forward-looking statements within the meaning of the Providian Securities Litigation Reform Act of 1995. These forward-looking statements include, but are not limited to, statements about the benefits of the merger between Washington Mutual and Providian, including future financial and operating results and performance; statements about Washington Mutual's and Providian's plans, objectives, expectations and intentions with respect to future operations, products and services; and other statements identified by words such as "expects," "anticipates," "intends," "plans," "believes," "seeks," "estimates", "will", "should", "may" or words of similar meaning. These forward-looking statements are based upon the current beliefs and expectations of Washington Mutual's and Providian's management and are inherently subject to significant business, economic and competitive uncertainties and contingencies, many of which are difficult to predict and generally beyond the control of Washington Mutual and Providian. In addition, these forward-looking statements are subject to assumptions with respect to future business strategies and decisions that are subject to change. Actual results may differ materially from the anticipated results discussed in these forward-looking statements.

The following factors, among others, could cause actual results to differ materially from the anticipated results or other expectations expressed in the forward-looking statements: (1) the businesses of Washington

Mutual and Providian may not be combined successfully, or such combination may take longer, be more difficult, time-consuming or costly to accomplish than expected; (2) the expected growth opportunities and cost savings from the merger may not be fully realized or may take longer to realize than expected; (3) operating costs, customer losses and business disruption following the merger, including adverse effects on relationships with employees, may be greater than expected; (4) governmental approvals of the merger may not be obtained, or adverse regulatory conditions may be imposed in connection with governmental approvals of the merger; (5) the stockholders of Providian may fail to approve the merger; (6) adverse governmental or regulatory policies may be enacted; (7) competition from other financial services companies in Washington Mutual's and Providian's markets; and (8) general business and economic conditions, including movements in interest rates, which could adversely affect credit quality and loan originations. Additional factors that could cause actual results to differ materially from those expressed in the forward-looking statements are discussed in the 2004 Annual Reports on Form 10-K of Washington Mutual and Providian filed with the Securities and Exchange Commission and available at the SEC's Internet site (http://www.sec.gov). Neither Washington Mutual nor Providian undertakes any obligation to update any forward-looking statements to reflect circumstances or events that occur after the date on which such statements were made.

Important Legal Information

This communication is being made in respect of the proposed merger transaction involving Washington Mutual and Providian. In connection with the proposed transaction, Washington Mutual and Providian will prepare a registration statement on Form S-4 containing a proxy statement/prospectus for the shareholders of Providian to be filed with the SEC, and each will be filing other documents regarding the proposed transaction with the SEC as well. Before making any voting or investment decision, investors are urged to read the proxy statement/prospectus regarding the proposed transaction and any other relevant documents carefully in their entirety when they become available because they will contain important information about the proposed transaction. The final proxy statement/prospectus will be mailed to Providian's shareholders. The registration statement containing the proxy statement/prospectus and other documents will be available free of charge at the SEC's Internet site (http://www.sec.gov). The proxy statement/prospectus (when it is available) and the other documents may also be obtained for free by accessing Washington Mutual's website at www.wamu.com under the tab "About WaMu" and then under the heading "Investor Relations" or by accessing Providian's website at www.providian.com under the tab "About Providian" and then under the heading "Investor Relations."

Washington Mutual, Providian and their respective directors and executive officers and other members of management and employees may be deemed to be participants in the solicitation of proxies in respect of the proposed transaction. Information regarding Washington Mutual's directors and executive officers is available in Washington Mutual's proxy statement for its 2005 annual meeting of shareholders, which was filed with the SEC on March 23, 2005 and information regarding Providian's directors and executive officers is available in Providian's proxy statement for its 2005 annual meeting of shareholders, which was filed with the SEC on March 31, 2005. Information regarding the persons who may, under the rules of the SEC, be considered participants in the solicitation of Providian shareholders in connection with the proposed transaction will be set forth in the proxy statement/prospectus when it is filed with the SEC.

```
CONTACT: Washington Mutual Contacts:
         Media:
         Alan Gulick, 206-377-3637
         alan.gulick@wamu.net
         or
         Investor Relations:
         Alan Magleby, 212-326-6019
         alan.magleby@wamu.net
         or
         Providian Contacts:
         Media:
         Alan Elias, 415-278-4189
         alan_elias@providian.com
         or
         Investors:
         Jack Carsky, 415-278-4977
         jack_carsky@providian.com

SOURCE: Washington Mutual, Inc.
```

 **Washington Mutual**

About Providian | Contact Us | Privacy & Security | Site Terms of Use | Site Map | Home



About Providian > Who We Are > Our Products

## Our Products

Washington Mutual Card Services offers a family of products designed to fit our cardholders' lives and provide the flexibility they need over time. By combining knowledge, analysis, and technology, we strive to match the right product to the right customer at the right time.

**Credit Products**
Our core credit card product, the Providian Visa Platinum® card, is an innovative product designed to provide more to American consumers: free access to, and information about, customers' FICO® credit scores — an industry first; coupons and discounts to popular restaurants and retailers; and a commitment to provide a fair credit line at a fair price and to review customers' credit lines regularly and grant an automatic increase to those who qualify.

   

- Providian Real Rewards™ is a new and different kind of rewards program. It rewards cardholders for different ways that they use their card — making purchases and even paying on time. And Providian Real Rewards provides customers with a variety of ways to redeem their reward points, including merchandise, restaurant discount cards, airline travel, and even the ability to use points to lower the APR on their account. More ways to earn points, more ways to redeem points — it's that simple.

- Providian Cash Rewards™ allows cardholders to earn cash back on every purchase they make with their card.

- Premium Points℠ is a rewards program that allows cardholders to earn points for purchases — one point per dollar, redeemable for merchandise, gift cards, or travel awards.

**Other Financial Products and Services**
A wide variety of financial services and products are available through Washington Mutual's national network of financial stores and at www.wamu.com.

About Providian | Contact Us | Privacy & Security | Site Terms of Use | Site Map | Home

Deposits are FDIC Insured.
© 2000 - 2007 Washington Mutual, Inc. All rights reserved.

# MASTERCARD PREMIUMCARD PROVIDIAN NATIONAL BANK ACCOUNT AGREEMENT

Your VISA Classic or MasterCard PremiumCard credit account (the "Account") allows you to make purchases by using your VISA Classic/MasterCard PremiumCard card (the "Card") wherever it is honored, and to get cash advances from any participating financial institution. In this Agreement, "you" and "your" mean each person for whom we have opened an Account. "We," "our," "ours," and "us" mean Providian National Bank or its assignee. Any use of this Account constitutes acceptance of this Agreement. The Account may be used only for personal, family, household, or charitable purposes, and not for any business or commercial purpose. You and we agree as follows:

1. **Promise to Pay.** You promise to pay us when due all amounts borrowed when you or someone else uses your Account (even if the amount charged exceeds your permission), all other transactions and charges to your Account, and collection costs we incur, including, but not limited to, reasonable attorney's fees and court costs. (If we sue you to collect the debt and you win the suit, we will pay your reasonable attorney's fees and court costs.)

2. **Payments.** We will send you a monthly statement showing your outstanding balance. You will pay us in U.S. dollars (checks must be payable at a U.S. office of the bank the check is drawn on) at least the payment due as shown on your statement by the payment due date in accordance with payment instructions on your monthly statement. The payment due will be: 3% of the new balance shown on your statement plus the amount of any past due payment, plus the amount by which the new balance exceeds your credit line, plus fees for certain optional services. However, the payment due will not be less than $15 (unless your new balance is less than $15, in which case the payment due will be the amount of the new balance). If your payment is more than the payment due, it will be treated as a single payment and none of it will be applied to future payments due.

When we receive your payment check, we may, at our discretion, keep the check and present it electronically to the financial institution on which the check is drawn. If we do so, we will provide you with a copy of the check at your request.

We may accept late or partial payments, or payments marked "paid in full" or marked with other restrictions, without losing our right to collect all amounts owing under this Agreement.

3. **Finance Charges.** Finance charges begin to accrue on a debit when it is included in either the daily purchase balance ("Purchase Balance") or the daily cash advance balance ("Cash Advance Balance") and continue to accrue until that balance is reduced by a payment or credit. The Purchase and Cash Advance Balances are reduced by payments as of the date received, and by credits as of the date posted. Normally, any payment amount we receive that exceeds the finance charges and fees then due will first be used to pay the remaining Purchase Balance, and then, after the Purchase Balance has been paid in full, will be used to pay any remaining Cash Advance Balance. However, we may apply your payments differently. Purchases are included in your Purchase Balance as of the date made. Fees (except cash advance fees) are included in the Purchase Balance as of the date posted. However, fees will not be included in the Purchase Balance for the purpose of calculating finance charges for the billing cycle when fees are the only balance on the last day of the billing cycle. Cash advance fees are included in the Cash Advance Balance as of the date posted. Cash advances from other financial institutions and through Automated Teller

made. If we send you a cash advance check and you use it, it will be included in your Purchase or Cash Advance Balance as required by law. Other debits are included in your Purchase or Cash Advance Balance as of the date posted. Finance charges are added to your Purchase and Cash Advance Balances each day and are then posted on the last day of the billing cycle.

To figure the daily finance charge for purchases and the daily finance charge for cash advances, we start with your previous day's Purchase Balance and Cash Advance Balance, add all debits and subtract all credits for the current day to the applicable balance (as explained in the paragraph above) and multiply the net amount by the applicable daily periodic rate. The daily periodic rate for purchases and cash advances is 0.0657% (corresponding to an ANNUAL PERCENTAGE RATE of 23.99%). The finance charge for purchases is then added to and included in that day's Purchase Balance and the finance charge for cash advances is then added to and included in that day's Cash Advance Balance. We treat a credit balance for any day as zero. We determine the total finance charges for the billing cycle by adding together the finance charge for purchases for each day within the billing cycle and the finance charge for cash advances for each day within the billing cycle. In calculating finance charges, an adjustment will be made for any transaction or payment that would have affected the finance charge calculation in a prior billing cycle had it been posted in that cycle. The applicable daily periodic rate for such a transaction will be the rate in effect for the current billing cycle rather than the rate in effect on the date of the transaction. There is no period within which credit extended may be repaid without incurring a finance charge.

To determine the average daily balance shown on your statement for purchases, add each day's Purchase Balance (including daily finance charge) in the billing cycle and divide by the number of days in the billing cycle. To determine the average daily balance shown on your statement for cash advances, add each day's Cash Advance Balance (including daily finance charge) in the billing cycle and divide by the number of days in the billing cycle. You can multiply each of these average daily balances by the number of days in the billing cycle and by the applicable daily periodic rate to obtain subtotals, and then add the two subtotals together to determine the total amount of your finance charges on balances for the billing cycle. If a cash advance transaction fee (see Fees, section 5) or credit line increase fee is charged, that amount is also a FINANCE CHARGE.

4. Changes. We may change any part of this Agreement or add or remove requirements, terms, or conditions after notice as required by law. If we change section 3, the new finance charge calculation will apply to your whole Account balance from the effective date of the change, whether or not the balance includes items posted to your Account before the change date and whether or not you continue to use the Account.

5. Fees. We will charge your Account $29 for: each billing cycle within which your Account is delinquent (late fee); each billing cycle within which your balance exceeds your credit line (overlimit fee); and each payment item that is returned to us unpaid (for example, bounced checks).

An annual fee of $59 will be charged to your Account every 12 months. For a second Card issued on your Account, an additional $25 annual fee will be charged for that Card. For cash advances, a transaction fee, which is a FINANCE CHARGE, will be charged that is the greater of $3 or 5% of the cash advance amount. For Cards sent at your request through an express service, we may charge $22. For each Card you ask us to replace, we may charge $18. For copies of back statements that were first sent to you more than three months earlier, we may charge $3 for each copy.

Your Account will be reviewed regularly for unsecured line increases. If you choose to accept a line increase, a fee may be charged. The amount of the fee, which is a FINANCE CHARGE, will be disclosed at that time.

Account. If so, this fee was a FINANCE CHARGE and the amount was disclosed on the statement.

Case 1:10-cv-00484-BPG   Document 10-9   Filed 03/09/10   Page 20 of 30

6. Credit Line. Your credit line is specified from time to time in a separate notice. We may increase or decrease your credit line based on your use of your Account and based on information we obtain from you or your credit records. Your available credit is normally the difference between your credit line and your Account balance (including transactions made or authorized but not yet posted). If you send us a large payment check, we may limit your available credit while we confirm that the check will clear. For cash advances, available credit will be less. You will not use your Account for, and we may refuse to honor, any transaction that would cause you to exceed your available credit.

7. Foreign Exchange/Currency Conversion. If you use your Card for transactions in a currency other than U.S. dollars, the transactions will be converted to U.S. dollars, generally using either a (i) government-mandated rate or (ii) wholesale market rate in effect the day before the transaction processing date, increased by one percent (1%). If a credit is subsequently given for a transaction, it will be decreased by one percent (1%). If the credit has a different processing date, then the exchange rate of the credit can be greater/less than that of the original transaction. The currency conversion rate on the day before the transaction processing date may differ from the rate in effect at the time of the transaction or on the date the transaction is posted to your Account. You agree to accept the converted amount in U.S. dollars.

8. Merchant Relations. We will not be liable if any person or Automated Teller Machine refuses to honor the Card or fails to return the Card to you. We have no responsibility for goods and services purchased with the Card except as required by law. (See Special Rule below.)

9. The Card; Cancellation. You will return the Card to us at our request. The Card expires at the end of the month shown on it. We have the right not to renew the Card. At any time after at least 30 days notice to you, or without notice if permitted by law, we may cancel the Card and your credit privileges. If your Card is cancelled or not renewed, finance charges and other fees will continue to be assessed, payments will continue to be due, and all other applicable provisions of this Agreement will remain in effect. You may cancel your credit privileges by notifying us in writing, destroying the Card, and paying your entire statement balance by the date indicated on the statement that includes your final purchases, cash advances, charges, and fees. Your credit privileges will be cancelled. You will still be responsible for paying any accrued finance charges and additional charges.

10. Personal Information; Documents. You will give us at least 10 days notice if you change your name, home or mailing address, telephone numbers, income, or job. You will promptly give us information about your financial affairs if we ask for it. We may get such information from others, including credit reporting agencies, and provide your address and information about your Account to others. We may also share information with our affiliates. However, you may write to us at any time instructing us not to share credit information with our affiliates. If you fail to fulfill any of your obligations under this Agreement, a negative credit report reflecting on your credit record may be submitted to credit reporting agencies.

11. Customer Service; Unauthorized Use, Loss, or Theft of the Card. Each Card must be signed on receipt. You will safeguard the Card and your Personal Identification Number (PIN), which provides access to Automated Teller Machines, from theft. You will keep your PIN separate from your Card. If you discover or suspect that the Card is lost or stolen, or that there may be an unauthorized transaction on your Account, you will notify us promptly by telephoning 1-800-356-0011. You will phone, even though you may notify us in writing, so we can act quickly to limit losses and liability. Your liability for unauthorized use occurring before you notify us is limited to $50. If you report or we suspect unauthorized

resolve the problem to our satisfaction or issue you a new Card. To improve customer service and security, you agree that your calls may be monitored or recorded.

12. Standard of Care. Transactions in your Account will be processed mechanically without necessarily reviewing every item. Our processing system will call our attention to certain items that we will examine. We will examine all transactions when you report that your Card has been lost or stolen. We do not intend ordinarily to examine all items, and we will not be negligent if we do not do so. This rule establishes the standard of ordinary care that we in good faith will exercise in administering your Account. Because of our limited review, and because your Card transaction slips will not be returned to you with the monthly statement, you should be careful to keep a record of them. You should save your cash advance and purchase slips. You agree to check your monthly statements against your record and to notify us promptly of any unauthorized transactions or errors.

13. Default. You will be in default: if you were not eligible for the Account at the time it was opened; if you fail to pay any amount due to us or to any other creditor; if you fail to comply with any part of this Agreement; if any information you gave us proves to be incomplete or false; upon your death, bankruptcy, or insolvency; if a bankruptcy petition is filed by or against you; or if we believe in good faith that you may not pay or perform your obligations under this Agreement. On your default, we may, without further demand or notice, cancel your credit privileges, declare your Account balance immediately due and payable, and invoke any remedy we may have. In the event of your default, the outstanding balance on your Account shall continue to accrue interest at the Annual Percentage Rate(s) disclosed in the Finance Charges section of this Agreement, even if we have sued you to collect the amount you owe.

14. Waiver of Certain Rights. We may delay or waive enforcement of any provision of this Agreement without losing our right to enforce it or any other provision later. You waive: the right to presentment, demand, protest, or notice of dishonor; any applicable statute of limitations; and any right you may have to require us to proceed against anyone before we sue you.

15. Applicable Law; Severability; Assignment. No matter where you live, this Agreement and your Account are governed by federal law and by New Hampshire law. This Agreement is a final expression of the agreement between you and us and may not be contradicted by evidence of any alleged oral agreement. At any time after we determine in good faith that any proposed or enacted legislation, regulatory action, or judicial decision has rendered or may render any material provision of this Agreement invalid or unenforceable, or impose any increased tax, reporting requirement, or other burden in connection with any such provision or its enforcement, we may, after at least 30 days notice to you, or without notice if permitted by law, cancel the Card and your credit privileges and declare your Account balance immediately due and payable. If any provision of this Agreement is held to be invalid or unenforceable, you and we will consider that provision modified to conform to applicable law, and the rest of the provisions in the Agreement will still be enforceable, but we will have the right to cancel your Account and declare your balance immediately due, as provided in the preceding sentence. We may transfer or assign our right to all or some of your payments. If state law requires that you receive notice of such an event to protect the purchaser or assignee, we may give you such notice by filing a financing statement with the state's Secretary of State.

16. Notices. Other notices to you shall be effective when deposited in the mail addressed to you at the address shown in our records, unless a longer notice period is specified in this Agreement or by law, which period shall start upon mailing. Notice to us shall be mailed to our address for Customer Service on your statement (or other addresses we may specify) and shall be effective when we receive it.

Your Billing Rights—Keep This Notice for Future Use

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about an entry on your bill, write us, on a separate sheet, at our address for billing disputes listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following:

— Your name and Account number.

— The dollar amount of the suspected error.

— A description of the error and an explanation, if possible, of why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After
We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges. We can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charge related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up the missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you question your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of the goods or services that you purchased with our credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. There are two limitations on this right: (a) you must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) the purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

For payments to your Account, send checks
or money orders to:

Providian Processing Services
P.O. Box 9553
Manchester, NH 03108-9553

For Customer Service, to report lost or stolen Credit
Cards, or for other questions, please call us toll-free:

1-800-356-0011

Providian National Bank   MEMBER FDIC



PROVIDIAN
Financial

R6012
F01-4829-0-1099

6

# IMPORTANT NOTICE OF CHANGES
## TO YOUR PROVIDIAN VISA®/MASTERCARD®
## ACCOUNT AGREEMENT

### MARCH 2005

Issuer: Providian National Bank, Tilton, NH

As explained below, we are amending your Visa/MasterCard Account Agreement. These changes will become effective as indicated below. The following explains these changes. All other provisions of your Account Agreement remain in effect. Please read this entire notice carefully and keep it for your records. Please also refer to the Important Notice of Changes to the Arbitration Provision of your Account Agreement and the Providian Privacy Policy enclosed herewith.

**Amendments to Section 4. Finance Charges. ANNUAL PERCENTAGE RATES ("APRs"). Standard APRs.**

The following is a clarification of an existing term and is effective immediately:

**Minimum Finance Charge.** A minimum FINANCE CHARGE of $1.00 will be assessed in any billing cycle in which you have a balance that is subject to periodic finance charges. If we impose finance charges on both Current-Cycle Transactions and Previous-Cycle Transactions (see Section 6 of your Account Agreement), a separate minimum FINANCE CHARGE of $1.00 will apply to each of these transaction categories.

**Amendments to Section 5. Other Fees.**

Effective April 2, 2005, the Other Fees section of your Account Agreement will be amended and the following language added:

**International Service Fee.** Beginning on April 2, 2005, if you use your Account for international transactions, you may be assessed a fee of 1% of each international transaction amount (see Section 7).

**Amendments to Section 6. How We Calculate Your Balance and the Finance Charge on Balances.**

Effective immediately, the Application of Payments section set forth in Section 6 of your Account Agreement will be amended and clarified as follows:

**Application of Payments.** A payment or any other credit adjustment will reduce your Account balance as of the day it posts to your Account. Funds posted may not be immediately available for your use. Payments will be applied first to finance charges and fees, then to the Balance Category with the lowest APR, until that Balance Category has been paid, then to the Balance Category with the next lowest APR, until that Balance Category has been paid, and so on, until all Balance Categories have been paid. If the Purchase Balance and another Balance Category have the same APR, payments will generally be applied first to Purchases.

## Amendments to Section 7. International Transactions.

Effective April 2, 2005, Section 7 of your Account Agreement will be amended as follows:

**7. Foreign Currency Conversion.** Transactions in a currency other than U.S. dollars will be converted to U.S. dollars, generally using either: (1) a rate selected by Visa/MasterCard from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa/MasterCard themselves receive; or (2) the government-mandated rate in effect for the applicable central processing date (the "Exchange Rate"). If you later receive a refund for a transaction, the amount of the refund will be converted to U.S. dollars at the Exchange Rate in effect when the refund transaction is processed, which may be different from the Exchange Rate for the original transaction.

**International Service Fee.** If you use your Account for international transactions, you may be assessed a fee of 1% of each international transaction amount. International transactions are defined as transactions with a merchant outside of the United States and U.S. territories. International transactions are potentially subject to the International Service Fee, whether or not currency conversion is involved. The International Service Fee may also be assessed when you return merchandise in an international transaction.

2

**Amendment to Rewards Programs:**

If you are enrolled in a rewards program that offers airline tickets as a redemption option (for example, Providian Premium Points, Providian Real Rewards™, or Providian AirPoints™), then starting on October 15, 2005, if not already applicable, we are changing the Terms and Conditions of your rewards program to replace the corresponding section as follows:

**Air travel rewards.** Air travel rewards and additional tickets purchased through the program are subject to fees imposed by the air travel industry and are not within our control. Certain fees associated with air travel rewards are changing. The minimum change/cancel fee will be $100 per ticket for domestic reservations and $200 per ticket for international reservations. For paper tickets, a minimum $12 shipping/handling fee will apply to each order. If paper tickets are requested when electronic tickets are available, a minimum $50 fee will apply to each paper ticket. In addition, a $35 per passenger ticket issuance fee will apply to your air travel reward reservation and to each additional ticket purchased. You are responsible for payment of all fees. All tickets issued are non-refundable and non-transferable. Visit the program Web site for further details. Fees associated with airline travel rewards are subject to change without notice.

**Gift card and gift certificate rewards.** The following is added to the "Individual Merchant Terms and Conditions" for your rewards program: The terms and conditions applicable to gift card and gift certificate rewards are provided by and vary by individual merchants. Limitations such as expiration dates and dormancy fees may apply. The expiration and dormancy fee time frames set forth in these Individual Merchant Terms and Conditions will be less than indicated due to purchasing and processing arrangements negotiated between the individual merchants and our program agent. However, in no event will the gift cards or certificates expire less than six (6) months from the time they are issued to you.

3

**Providian**®

Providian National Bank MEMBER FDIC
© 2005 Providian Financial Corporation

NMA0068
IN030507

4

<u>STATEMENT</u>

<u>ACCOUNT SUMMARY</u>

NAME OF DEFENDANT(S)    <u>Timmy L Stone, Sr</u>

ADDRESS    <u>14 Sunny Ct</u>

    <u>Thurmont,Maryland 21788</u>

ACCOUNT NUMBER    <u>4185870001831242</u>

CHARGE OFF DATE    <u>4/30/08</u>

BALANCE DUE    <u>3,274.25</u>  plus interest due from <u>4/30/08</u>
    interest worksheet to follow
    Plus attorney fees of <u>491.13</u>.

THIS IS TO CERTIFY THAT THE ABOVE IS TRUE AND CORRECT ABSTRACT OF THE
ABOVE MENTIONED ACCOUNT, TAKEN FROM THE RECORDS MAINTAINED IN THE
USUAL COURSE OF BUSINESS OF <u>Wayric Services, Inc.</u>.

    <u>Richard Rieman, Jr.</u>
    <u>President</u>

SGP/brs
106 09-18062-0

# PEROUTKA & PEROUTKA, P.A.

### ATTORNEYS AT LAW

Stephen G. Peroutka
Michael A. Peroutka

Gary M. Janis
Michele R. Gagnon

8028 Ritchie Highway
Suite 300

Pasadena, MD  21122
410-768-2424
Fax: 410-553-9491

Gregory M. Quinlan*
(D. 1997)

Shawn P. Kennedy*
Manager
*Not admitted to practice law

District Court of Maryland
Civil Clerk

RE: Maryland Rules 16-1006 and 16-1007

Dear Clerk:

Please be advised that this complaint and further information to be contained in this case in the future, may contain confidential information that is not subject to inspection under Rules 16-1006 and 16-1007.

Sincerely,

Peroutka & Peroutka, P.A.

IN THE DISTRICT COURT OF MARYLAND FOR FREDERICK COUNTY

Wayric Services, Inc.,
      Plaintiff,

vs.

                                        Case No. 1101-2973-2009
                                        Complaint 001

                                        Trial Date 8/10/09

Timmy L. Stone, Sr.,
      Defendant.

LINE TO ENTER APPEARANCE

     PLEASE enter the appearance of Douglas B. Bowman as attorney for the defendant.

                              Respectfully submitted,

                              _____
                              Douglas B. Bowman   #0150
                              PO Box 503
                              Middletown MD 21769
                              240-566-6050
                              Attorney for the Defendant

CERTIFICATE OF SERVICE

     I hereby certify that on 8/10/09 a copy of this paper was served by delivery or by first class mail postage prepaid deposited with the U.S. Postal Service addressed to Stephen Peroutka, Peroutka & Peroutka PA, 8028 Ritchie Hwy #300, Pasadena MD 21122, attorney for the plaintiff.

                              _____
                              Douglas B. Bowman

MOTION REC'D IN OPEN COURT

DATE 8/10/09 CLERK SH

ENTERED BY: SH